# IN THE COURT OF APPEALS OF IOWA

No. 21-1129
Filed July 20, 2022


**WILLIAM D. BEEMAN,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____


　　　Appeal from the Iowa District Court for Muscatine County, Mark Fowler, Judge.


　　　William Beeman appeals the summary disposition of his application for postconviction relief. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


　　　Joshua A. Tepfer of Exoneration Project, Chicago, Illinois, Tricia J. Rojo Bushnell of Midwest Innocence Project, Kansas City, Missouri, and Erica A. Nichols Cook of State Public Defender's Office, Des Moines, attorneys for appellant.

　　　Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.


　　　Considered by Greer, P.J., Ahlers, J., and Mullins, S.J.*

　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**MULLINS, Senior Judge.**

## I.     Background

We recently surveyed William Beeman's varying paths through the criminal justice system over the last four decades, beginning with the facts precipitating his 1980 conviction for first-degree murder—the acts underlying which the State theorized occurred on April 21, 1980—and ending with his 2020 motion for a new trial in the criminal case based on his claim he

> "discovered, for the first time, evidence that the State long withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)," namely witnesses who believed to have seen the victim alive after April 21 and when Beeman had an alibi, detailed information about several other suspects law enforcement pursued, other witnesses unknown to the defense, and new scientific evidence disputing the State's theory of the date of the victim's death.

*State v. Beeman*, No. 20-1288, 2021 WL 4891010, at *1 (Iowa Ct. App. Oct. 20, 2021), *further review denied* (Mar. 30, 2022).[1]  The motion for a new trial was denied by the district court in October 2020,[2] and Beeman appealed.[3]

---

[1] Along the way, Beeman filed two applications for postconviction relief, a federal habeas action, and a motion to correct an illegal sentence, all of which were denied.

[2] The order denying the motion for a new trial was entered in August, but the ruling denying Beeman's motion to reconsider, enlarge, or amend was not issued until October.

[3] We treated the appeal as a petition for writ of certiorari and granted the writ.  *See Beeman*, 2021 WL 4891010, at *2.  The issue we addressed on appeal was whether Beeman was entitled to a new trial on his claim that that State withheld exculpatory evidence, namely witnesses and alternate suspects, in violation of *Brady*.  *See id.* at *3–5.  Ultimately, we annulled the writ of certiorari because we were "unable to conclude the alleged exculpatory evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict' and evidence does not entitle Beeman to a new trial."  *Id.* at *5 (quoting *State v. Barrett*, 952 N.W.2d 308, 313 (Iowa 2020)).

About two months later, and while the appeal from the denial of the motion for a new trial was pending, Beeman filed a PCR application. He argued he was entitled to a new trial due to the following: (1) actual innocence under *Schmidt v. State*, 909 N.W.2d 778 (Iowa 2018) based on newly discovered witnesses and scientific evidence,[4] (2) the State's suppression of exculpatory evidence—the witnesses and alternate suspects—in violation of *Brady*,[5] (3) the State's alleged presentation of "false testimony,"[6] (4) the State's bad faith "destruction of the biological evidence,"[7] (5) "the admission and use of [his] unreliable confession violate[d] his constitutional rights to due process,"[8] and (6) "trial counsel was ineffective in failing to present scientific expert testimony on time of death."[9]

The State responded with a motion for summary disposition, asserting the application was barred by the statute of limitations and his claims were already

[4] The claim of actual innocence was based on the same witnesses and expert testimony from a pathologist concerning time of death upon which Beeman based his motion for a new trial.

[5] This claim was essentially identical to the claim raised in Beeman's motion for a new trial, that the State suppressed an alternate-suspect list and witnesses who allegedly saw the victim alive after April 21.

[6] This claim was based on deposition testimony of a deputy about the exact time the victim participated in a phone call from a spa shortly before her death and a special agent's testimony about how many witnesses he recalled that claimed to have seen the victim after April 21.

[7] This claim related to the allegation that the State destroyed a sexual assault kit of the victim.

[8] This claim was based on the assertion that "new evidence learned from the academic study of false confessions and interrogations shows that Beeman's confession was not voluntary." Beeman also argued his confession was not corroborated by other evidence.

[9] In denying Beeman's motion for a new trial, the district court found Beeman's offered expert testimony on time of death was not "new," since the science underlying the expert's opinion existed at the time of trial. Apparently acknowledging the court was correct on this, Beeman's PCR application alleged his criminal trial counsel was ineffective in not presenting expert testimony on this science.

litigated or should have been raised in prior pursuits for relief. In his resistance, Beeman argued each of his "grounds for relief shares a nexus with a newly discovered fact so that the exception to the time bar in [s]ection 822.3 applies to each claim" and "[t]his new evidence also provides sufficient reasons for why these claims were not included" in prior applications.

At the hearing on the motion, the State added all of the issues were also impacted by the resolution of the pending appeal from the denial of Beeman's motion for a new trial in the criminal case. Beeman responded "[t]he fact that [he] also filed a motion for new trial in the criminal case has no bearing on a PCR."

In its July 2021 ruling, the court noted the issues raised in Beeman's "motion for a new trial are very similar or the same as the issues presented for [PCR]." While the court noted Beeman's claims of actual innocence and ineffective assistance of counsel were not addressed in conjunction with the motion for a new trial, it found they were "still interwoven with the issues raised in the motion for new trial." So the court found the pendency of the appeal rendered all claims not ripe for adjudication, and the court dismissed the PCR application as premature.

Beeman filed a combined motion to reconsider, enlarge, or amend or stay the proceedings pending the outcome of the appeal in the criminal case. While Beeman agreed "it may be sound judicial administration to stay the PCR [a]pplication pending the outcome of the appeal," he asserted "the appeal does not alter or remove this [c]ourt's jurisdiction to hear the PCR [a]pplication." In the event the court determined resolution of the appeal was a prerequisite to consideration of his claims, Beeman requested the court to say the PCR proceeding until the appeal was decided. He also argued his application raised issues distinct from

those pending on appeal. The court denied the motion, adhering to its position that the application was premature because potential remedies that could result on appeal were not exhausted. Beeman appeals.

## II.    Standard of Review

We ordinarily review summary disposition rulings in PCR proceedings for legal error, but our review is de novo when claims of ineffective assistance of counsel come into play. *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019).

## III.    Analysis

On appeal, Beeman argues summary disposition of his application on the basis that it was premature was error because "there is no precedent that supports dismissal as premature because of a pending appeal." He requests that we reverse and remand for consideration on the merits or the issuance of a stay during the pendency of the appeal rather than dismissal. As to the merits, he also points out the appeal only concerned the pursuit of a new trial based on the State's alleged *Brady* violation, while his PCR application raised several additional claims based on purported newly discovered evidence. Finally, Beeman submits summary disposition was improper because genuine issues of material fact remain.

The State responds the district court was correct to dismiss the application as premature for purposes of not issuing "a ruling that reached a different, incompatible conclusion about the same evidence." But the State agrees "it probably would also have been permissible for the PCR court to stay this action, until Beeman's appeal concluded." The State argues it does not matter, though, because a dismissal order not addressing the merits and allowing Beeman to refile

when his appeal concluded would have the same effect as the issuance of a stay. All that said, the State submits "it would be correct to affirm . . . on the grounds that were urged in the State's motion for summary disposition."

We agree with the parties that a stay of the proceeding until resolution of the appeal was a permissible option. And the court justified its entry of summary disposition on the ripeness doctrine. That doctrine's purpose is to protect *administrative agencies* from judicial interference through avoidance of premature adjudication until formal *administrative* action. *See State v. Tripp*, 776 N.W.2d 855 859 (Iowa 2010). In the PCR realm, an adverse disposition based on the ripeness doctrine is normally only justified in those proceedings in which some form of administrative action is to be formalized in the future. *See, e.g.*, *Godfrey v. State*, No. 18-0819, at *2 (Iowa Ct. App. May 15, 2019); *Murray v. State*, No. 17-1770, 2018 WL 4361053, at *2 (Iowa Ct. App. Sept. 12, 2018); *Anderson v. State*, No. 17-0691, 2018 WL 1634879, at *1 (Iowa Ct. App. Apr. 4, 2018); *Crady v. State*, No. 16-0537, 2016 WL 7393912, at *1 (Iowa Ct. App. Dec. 21, 2016); *Moore v. State*, No. 13-1548, 2014 WL 3748321, at *1–2 (Iowa Ct. App. July 30, 2014). That is not what we have here.

Although we agree with the district court that the issues before it would not be ready for adjudication until the appeal on the motion for new trial concluded, that does not support a conclusion that the State was entitled to judgment as a matter of law, which is the standard for granting summary disposition. *See* Iowa Code § 822.6(3) (2020). Our decision would unquestionably impact, and perhaps control, the PCR proceeding or parts of it, but its pendency did not render Beeman's application hypothetical or speculative. *See State v. Iowa Dist. Ct.*, 616

N.W.2d 575, 578 (Iowa 2000) (noting "[a] case is ripe when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative"). So we agree with Beeman that the pending appeal did not entitle the State to judgment as a matter of law, and entry of summary disposition on that basis was therefore error.[10]

That brings us to the State's request to affirm on grounds urged by the State below but not relied on by the court in granting summary disposition. *See King v. State*, 818 N.W.2d 1, 11 (Iowa 2012) ("[W]e will uphold a district court ruling on a ground other than the one upon which the district court relied provided the ground was urged in that court." (citation omitted)). Beeman responds the summary disposition record is insufficient to facilitate our ability to do so. We will address each of Beeman's claims for relief in turn.

The State argued Beeman's actual innocence claim was time-barred as to the scientific evidence and already litigated as to the allegedly suppressed evidence. The record is undisputed that the expert testimony provided by Dr. Andrew Baker is not new and could have been raised within the limitations

---

[10] Even if we were to assume without deciding that dismissal as premature was also a permissible option, and agreeing with the State that Beeman would inevitably refile following the conclusion of the appeal, the question becomes which option was better? At this juncture, and in light of the fact that the appeal in the criminal case has concluded and considering judicial economy and lack of prejudice to the State, we would still find the better option is to reverse summary disposition and remand to the district court for the proceeding to be picked up where it left off, as opposed to starting the exact same proceeding from scratch. *Cf. Kent Feeds, Inc. v. Manthei*, 646 N.W.2d 87, 90 (Iowa 2002) (noting consolidation of actions sharing "common questions of law or fact" is "a method of achieving judicial economy in the proper case" "unless a party will suffer prejudice as a result"); *Shelton v. Tr. Created by Joint Tr. Agreement of Shelton*, No. 20-1006, 2021 WL 5458088, at *3 (Iowa Ct. App. Nov. 23, 2021) (discussing consolidation as "a means to achieve judicial economy").

period. So it does not serve to except Beeman from the statute of limitations. *See Quinn v. State*, 954 N.W.2d 75, 77 (Iowa Ct. App. 2020) ("*Schmidt* does not apply to overcome the statute of limitations where the evidence put forward to support a claim of actual innocence was available to the applicant or could have been discovered with due diligence within the limitations period."). As to the allegedly suppressed evidence, witnesses who reported seeing the victim alive beyond the theorized time of her death, that claim for relief was litigated in conjunction with Beeman's motion for a new trial, which ended in our conclusion that disclosure of the evidence would not have created a reasonable probability of a different outcome. *See Beeman*, 2021 WL 4891010, at *3–5. The same evidence certainly cannot clearly and convincingly show "that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the appellant of the crime[] . . . in light of all the evidence, including the newly discovered evidence." *See Schmidt*, 909 N.W.2d at 797.[11] That ground for relief, which has been finally

---

[11] We acknowledge the somewhat differing standards between grounds for granting relief on a motion for a new trial as compared to a PCR application. A motion for new trial may be granted "[w]hen the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial." Iowa R. Crim. P. 2.24(2)(b)(8). But when *Brady* is used as the vehicle to obtain a new trial based on the new evidence, the party seeking a new trial must show materiality—a reasonable probability of a different outcome. *See State v. Barrett*, 952 N.W.2d 308, 313 (Iowa 2020). That is how we addressed Beeman's pursuit of a new trial based on *Brady. See Beeman*, 2021 WL 4891010, at *3–5. An applicant for PCR based on "evidence of material facts, not previously presented and heard" under section 822.2(1)(d) must show, by a preponderance of the evidence "that the evidence would have changed the result of the trial." *Moon v. State*, 911 N.W.2d 137, 151 (Iowa 2018) (citation omitted). But a claim of actual innocence requires a showing by clear and convincing evidence that "no reasonable juror could have found the applicant guilty in light of the new evidence." *Schmidt*, 909 N.W.2d at 795. Our prior conclusion that the evidence lacked materiality is tantamount to conclusions that the evidence would not have changed

adjudicated in another proceeding Beeman took to secure relief, cannot be the basis for relief in a subsequent application.[12]  *See* Iowa Code § 822.8.  Turning to Beeman's claim for relief based on the State's violation of *Brady*, our appellate decision serves as a head-on final adjudication on that issue as well.  *See id.*

Beeman's claim that the State presented false testimony at trial was not an issue we were meaningfully pinpointed to in the appeal.  But Beeman's application only asserted a deputy provided false or incorrect testimony in his *deposition* about L.D., a supposed alternate suspect.  Yet, the rules of law he cites only afford relief when false testimony is employed at trial.  And this claim is, in reality, an offshoot of Beeman's claim of a *Brady* violation based on the State's alleged failure to disclose information about alternate suspects, including L.D., a claim for relief we already rejected.  *See Beeman*, 2021 WL 4891010, at *3 ("As to the State's consideration of alternate suspects, the record is undisputed that the defense was informed that law enforcement had up to eleven suspects in mind.  The defense did not pursue that information any further.  Any evidence about alternative suspects could have been obtained and produced at trial with reasonable diligence, . . . and the defense knew about the existence of alternative suspects, so the evidence was not suppressed within the meaning of *Brady*.").  Having been available to Beeman within the limitations period, this is not new evidence that serves as a new ground of fact to except him from the limitations period.  Turning to Beeman's claim relating to a special agent's trial testimony that he did not recall

---

the result of the trial, and reasonable jurors could have found Beeman guilty even considering the new evidence.

[12] We note Beeman applied for further review following our decision, and the supreme court denied the application.

more than one witness reporting they saw the victim after April 21, this is also an offshoot of Beeman's *Brady* claim, and we already concluded evidence about the specific witnesses who believed they might have seen the victim could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at *5. Beeman's false testimony claim is really only a repackaging of claims that are the subjects of a final adjudication, so summary disposition was proper on this claim.

Next, Beeman's challenge to the voluntariness of his confession is likewise the subject of a final adjudication. *See id.* ("While Beeman continues to maintain in this appeal that his confession was coerced, that ship has sailed."); *see also Beeman v. Iowa*, 108 F.3d 181, 184–85 (8th Cir. 1997), *cert. denied* 522 U.S. 846 (1997); *State v. Beeman*, 315 N.W.2d 770, 778–79 (Iowa 1982).[13] And Beeman's claim of ineffective assistance of criminal trial counsel for failing to present expert testimony on time of death is unquestionably time-barred.

So we agree with the State's alternative arguments below that summary disposition was proper on the foregoing claims as either time-barred by the statute of limitations or already the subject of a final adjudication in another proceeding Beeman has taken to secure relief. *See* Iowa Code §§ 822.3, .8. That leaves us with Beeman's claim relating to the destruction of biological evidence. The record discloses that, at least at this point, no one really knows what happened to the evidence or when it disappeared. The record also indicates the factual

---

[13] *Overruled by State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006), (holding "that, if the act causing willful injury is the same act that causes the victim''s death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes").

underpinnings of this claim are still being developed. So we find the existence of genuine issues of material fact on this claim sufficient to survive summary disposition. We reverse the entry of summary disposition on this claim and remand for further proceedings.

**IV.    Conclusion**

We conclude the State was not entitled to judgment as a matter of law on the basis cited by the district court. With the exception of Beeman's claim relating to the State's alleged destruction of biological evidence, we find the entry of summary disposition was proper as either time-barred by the statute of limitations or already the subject of a final adjudication in another proceeding Beeman has taken to secure relief, as was alternatively argued by the State in the district court. We reverse the entry of summary disposition on the destruction-of-evidence claim, affirm the entry of summary disposition on all other claims, and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**